1    GREGORY O'HARA (SBN: 131963)
gohara@nixonpeabody.com
2    NIXON PEABODY LLP
Two Palo Alto Square
3    3000 El Camino Real, Suite 500
Palo Alto, California 94306
4    Telephone: (650) 320-7700
Facsimile: (650) 320-7701
5

6    JOHN R. FOOTE (SBN: 99674)
jfoote@nixonpeabody.com
7    KARL K. SUNG (SBN: 294120)
ksung@nixonpeabody.com
8    NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
9    San Francisco, California 94111
Telephone: (415) 984-8200
10   Facsimile: (415) 984-8300

11
*Attorneys for Defendants Michael Shemali, Wines of the*
12   *World, LLC, Tri Cities Liquor & Spirits, LLC, Belmont Wine*
*Exchange, LLC, Matt Myers, Hi-Time Wine Cellars, Sandra*
13   *Rodriguez, Eduardo Rodriguez, and Sandi's Pet Place Inc.*

14
**UNITED STATES DISTRICT COURT**
15
**NORTHERN DISTRICT OF CALIFORNIA**
16

17
H.P.D. CONSOLIDATION, INC. dba VALLEY
18   WINE WAREHOUSE,

19               Plaintiff

20
v.
21
JOSE PINA aka JOSE LUIS PIEDRA, et al.
22
            Defendants.
23

Case No. 3:15-cv-5309 EMC

**CERTAIN DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:     March 31, 2016
Time:     1:30 p.m.
Before:   Honorable Edward M. Chen

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................1

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ...............................2

INTRODUCTION .................................................................................2

RELEVANT FACTS ...............................................................................3

ARGUMENT ....................................................................................5

I.      STANDARD OF REVIEW ..................................................................5

II.     PLAINTIFF'S FEDERAL RICO CLAIMS SHOULD BE DISMISSED ........................6

        A.      Plaintiff's First and Second Claims For Relief – 18 U.S.C §§ 1962(b) and (c)
                – Fail .......................................................................7

                1.      Plaintiff Fails to Adequately Allege the Existence of an Enterprise
                        with which the Moving Defendants were Associated .................8

                2.      Plaintiff Fails to Adequately Allege that any of the Moving
                        Defendants Acquired an Interest in or Control Over the Enterprise ........11

                3.      Plaintiff Fails to Adequately Allege that any of the Moving
                        Defendants Participated in the Conduct of the Affairs of the
                        Enterprise ..............................................................12

                4.      Plaintiff Fails to Adequately Allege a "Pattern" of Racketeering
                        Activity ...............................................................13

                5.      Plaintiff Fails to Adequately Allege "Causation" (Standing)....................15

        B.      Plaintiff's Third Claim for Relief – 18 U.S.C § 1962(d) – Fails..........................18

III.    PLAINTIFF'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED ...................19

        A.      Plaintiff's Fourth Claim for Relief – Unfair Competition – Fails ........................19

        B.      Plaintiff's Fifth Claim for Relief – Conversion – Fails .......................................19

        C.      Plaintiff's Sixth Claim for Relief – Embezzlement – Fails ...................................21

IV.     CONCLUSION ........................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alves v. Players Edge, Inc.*,
   No. 05CV1654WQH(CAB), 2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ........................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 5

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ................................................................................... 13, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 5, 6

*Boyle v. U.S.*,
   556 U.S. 938 (2009) ....................................................................................................... 8

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001 (8th Cir. 2008) ..................................................................................... 13

*Doan v. Singh*,
   617 Fed. Appx. 684 (9th Cir. 2015) ............................................................................ 8, 9

*Eclectic Properties v. Marcus & Millichap Co.*,
   No. C-09-00511 RMW, 2012 WL 713289 (N.D. Cal. Mar. 5, 2012) ...................... 12, 13, 14

*Eclectic Properties v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................... 5, 6, 12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ...................................................................................... 7, 13, 14, 15

*Hemi Grp., LLC v. N.Y.C., N.Y.*,
   559 U.S. 1 (2010) ......................................................................................................... 16

*Herrejon v. Ocwen Loan Serv.*,
   980 F. Supp. 2d 1186 (E.D. Cal. 2013) ....................................................................... 19

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ....................................................................................................... 7

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ....................................................................................... 17

ii

*Ikuno v. Yip*,
  912 F.2d 306 (9th Cir. 1990) ........................................................................................... 11

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................................................ 6

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ......................................................................... 11, 17

*Mohebbi v. Khazen*,
  50 F. Supp. 3d 1234, 1257 (N.D. Cal. 2014) ...................................................................... 20

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .............................................................................................. 8

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
  298 F.3d 768 (9th Cir. 2002) ............................................................................... 15, 16, 17

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ............................................................................... 13, 14, 17

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................................... 11, 12, 13

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
  630 F.3d 866 (9th Cir. 2010) ........................................................................................ 7, 15

*Sebastian Int'l, Inc. v. Russolillo*,
  186 F. Supp. 2d 1055 (C.D. Cal. 2000) ............................................................................... 7

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) ........................................................................................................... 7

*Shroyer v. New Cingular Wireless Servs.*,
  622 F.3d 1035 (9th Cir. 2010) ............................................................................................ 5

*Teague v. Bakker*,
  35 F.3d 978 (4th Cir.1994) ............................................................................................... 11

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) .......................................................................................... 14

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
  757 F. Supp. 1053 (N.D. Cal. 1991) .................................................................................. 17

*U.S. v. Christensen*,
  801 F.3d 970 (9th Cir. 2015) .............................................................................................. 8

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*U.S. v. Persico*,
  832 F.2d 705 (2d Cir. 1987) ............................................................................. 13

*U.S. v. Turkette*,
  452 U.S. 576 (1981) ........................................................................................... 8

*Wagh v. Metris Direct, Inc.*,
  348 F.3d 1102 (9th Cir. 2003) ........................................................................... 7

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008) .................................................................. 12, 13

*Webster v. Omnitron Int'l Inc.*,
  79 F.3d 776 (9th Cir. 1996) ............................................................................. 13

*Whaley v. Auto Club Ins. Ass'n*,
  891 F. Supp. 1237 (E.D. Mich. 1995) ............................................................. 11

## CALIFORNIA CASES

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*,
  7 Cal. 4th 503 (1994) ...................................................................................... 19

*Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................... 19

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ......................................................................... 19

*People v. Beaumont Inv., Ltd.*,
  111 Cal. App. 4th 102 (2003) ......................................................................... 19

*Smith v. State Farm*,
  93 Cal. App. 4th 700 (2001) ........................................................................... 19

*Walker v. Countrywide Home Loans, Inc.*,
  98 Cal. App. 4th 1158 (2002) ......................................................................... 18

*Wyatt v. Union Mortgage Co.*,
  24 Cal. 3d 773 (1979) ..................................................................................... 19

## FEDERAL STATUTES

18 U.S.C. § 1962(b) ................................................................................ passim

18 U.S.C. § 1962(c) ................................................................................ passim

iv

1

18 U.S.C. § 1962(d) .................................................................................................. 6, 17

2

**CALIFORNIA STATUTES**

3

Cal. Business and Professions Code § 17200 ............................................................... 18

Cal. Penal Code § 503 ................................................................................................ 20

4

5

6

**RULES**

7

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................ 1, 5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:15-cv-5309

072485-000004
DRAFT 02/25/16 11:04AM

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 31, 2016 at 1:30 p.m., or as soon thereafter as the matter can be heard, Defendants Michael Shemali ("Shemali"), Wines of the World, LLC ("WOW"), Tri Cities Liquor & Spirits, LLC ("Tri Cities"), Belmont Wine Exchange, LLC ("BWE"), Hi-Time Wine Cellars ("Hi-Time"), Matt Myers ("Myers"), Sandra Rodriguez and Eduardo Rodriguez ("Rodriguezes"), and Sandi's Pet Place Inc. ("Sandi's") (collectively, the "Moving Defendants"), through their undersigned counsel of record, will and hereby do move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing with prejudice the Complaint of Plaintiff H.P.D. Consolidation, Inc. ("Plaintiff") against each of them for failure to state a claim upon which relief can be granted.

The Moving Defendants seek by means of this motion to have the Court enter an Order dismissing with prejudice each and every claim of the Plaintiff's Complaint on the ground that each and every claim fails to sufficiently state a claim upon which relief can be granted.  The Moving Defendants base their motion on this Notice of Motion and Motion, the following Points and Authorities in Support of Motion, and any additional evidence or argument that may be submitted prior to or at the hearing on this motion.

Dated:  February 25, 2016                                    NIXON PEABODY LLP


By:  _____ */s/ John R. Foote* _____
    GREGORY O'HARA (SBN: 131963)
    JOHN R. FOOTE (SBN: 99674)
    KARL K. SUNG  (SBN: 294120)
    Attorneys for Defendants Michael Shemali,
    Wines of the World, LLC, Tri Cities Liquor &
    Spirits, LLC, Belmont Wine Exchange, LLC,
    Matt Myers, Hi-Time Wine Cellars, Sandra
    Rodriguez, Eduardo Rodriguez, and Sandi's Pet
    Place Inc.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

The Moving Defendants hereby respectfully submit the following points and authorities in support of their motion to dismiss the Plaintiff's Complaint.

### INTRODUCTION

Plaintiff has commenced this action in order to recover damages that it claims to have suffered as the result of an alleged theft of wine in which the Moving Defendants are not alleged to have played any part.  Plaintiff has filed a Complaint against a total of thirteen defendants.  Plaintiff alleges that three of these defendants—Jose Pina ("ATD-Pina"), Edwin Whitefield ("ATD-Whitefield"), and David L. Borges ("ATD-Borges") (collectively, the "Alleged Theft Defendants" or "ATD")—either stole, or assisted and conspired with each other to steal, wine from Plaintiff's storage facility. [1]  The Alleged Theft Defendants are ***not*** represented in this Motion to Dismiss.  The Moving Defendants represented in this Motion are nine out of the ten remaining defendants. [2]

Plaintiff alleges that ATD-Pina stole the wine, assisted by and in conspiracy with ATD-Whitefield and ATD-Borges.  Plaintiff also alleges that, after the theft, ATD-Borges sold some of the stolen wine to Moving Defendants Shemali and his companies, WOW and Tri-Cities, which allegedly then resold some of the wine to Moving Defendants BWE, Myers, and Hi-Time, with Moving Defendants the Rodriguezes and Sandi's allegedly being used by Myers as "conduits" to receive the wine in Southern California.  ATD-Borges allegedly did not pay ATD-Pina and ATD-Whitefield for the wine until after he received checks from Shemali, at which time ATD-Borges allegedly paid ATD-Pina and ATD-Whitefield in cash.

Plaintiff does not allege that any of the Moving Defendants played any role in the alleged theft of wine from Plaintiff's storage facility.  In fact, the Complaint is wholly devoid of any allegation that any of the Moving Defendants was aware of the Alleged Theft Defendants'

---

[1]  The Moving Defendants do not by using this label intend to assert that any of the Alleged Theft Defendants was actually involved in the theft of the wine.  Rather, this label merely reflects Plaintiff's allegations against these defendants.
[2]  Defendant Rajiv Malhan is not a party represented by counsel for the Moving Defendants and, thus, the instant Motion to Dismiss does not apply to him.

2

072485-000004
DRAFT 02/25/16 11:04AM

1 purported scheme to steal wine from Plaintiff's storage facility and then sell it. Nor does Plaintiff

2 allege any facts to plausibly suggest that any of the Moving Defendants even knew that the wine

3 that they bought and/or sold was stolen. Indeed, the allegations in the Complaint fail to exclude in

4 any way the obvious and innocuous alternative explanation that Shemali, assuming ATD-Borges

5 was a private wine collector or dealer, simply conducted a standard arms-length transaction to

6 purchase wine from ATD-Borges, and then Shemali resold that wine to some of his regular

7 customers, none of whom had any reason to suspect that the wine had been stolen.

8      Because the Complaint fails to assert any allegations demonstrating that any of the Moving

9 Defendants played any part in the alleged theft of the wine from Plaintiff's storage facility or

10 joined any purported conspiracy with the Alleged Theft Defendants to sell the stolen wine, the

11 Court should dismiss Plaintiff's RICO, Unfair Competition, Conversion, and Embezzlement

12 claims, none of which has any basis in either law or fact.

13                                   **RELEVANT FACTS**

14      Plaintiff alleges that ATD-Pina stole wine from Plaintiff's storage facility. (Compl. ¶ 8.)

15 ATD-Pina allegedly had access to Plaintiff's storage facility because he was once an employee of

16 Plaintiff. *Id.* Plaintiff further alleges that ATD-Whitefield and ATD-Borges "assisted and

17 conspired with Pina in the actual physical theft of the wine." (Compl. ¶¶ 9-10.) Specifically,

18 ATD-Whitefield allegedly provided ATD-Pina with a truck owned by ATD-Borges, which was

19 used to haul off the stolen wine. (Compl. ¶ 22.) While the Complaint alleges that each of the

20 Alleged Theft Defendants either stole the wine, or assisted and conspired with one another to steal

21 the wine, nowhere in the Complaint does Plaintiff assert that any of the Moving Defendants

22 assisted, or were otherwise involved with, any of the Alleged Theft Defendants in stealing wine

23 from Plaintiff's storage facility. (Compl. ¶¶ 8-11, 13-19.)

24      Plaintiff does not allege any facts leading up to the sale of the stolen wine, such as how or

25 when the parties met, but simply alleges that ATD-Borges sold some of the stolen wine to both

26 Shemali and two wine companies that Shemali owns, WOW and Tri Cities. (Compl. ¶ 23.)

27 Plaintiff attached as an exhibit to the Complaint eight checks that Shemali allegedly issued from

28

WOW's account to ATD-Borges for the purchase of the wine but attached no checks issued from any account of Tri Cities. (Compl. ¶ 23, Exh. A.) The dates on the WOW checks extend over a period of only a few weeks, from February 20, 2014 to March 10, 2014. (*Id.*)

Shemali, who is a wine broker, allegedly resold some of the wine to two of his customers, BWE and Myers. (Compl. ¶ 24.) Myers allegedly used the Rodriguezes and their pet store, Sandi's, as "conduits" to receive the wine, after which Myers allegedly stored some of the wine at Hi-Time and also sold some of the wine to Hi-Time. (*Id.*) Allegedly, once Shemali had resold some of the wine to BWE and Myers, he had ATD-Borges ship the wine directly to BWE and Myers. (Compl. ¶ 25.) ATD-Borges allegedly provided Shemali with receipts for the wine sales, as well as tracking information for the wine shipments, which Shemali later provided to Plaintiff in an effort to assist with its investigation of the stolen wine. (*Id.*) Plaintiff alleges that it saw some of the stolen wines listed for sale on the websites of WOW, BWE, and Hi-Time. (Compl. ¶ 26.) Plaintiff alleges that the Moving Defendants must have known that the wine was stolen simply because it purportedly was not available in the marketplace. (Compl. ¶ 27.) Plaintiff also speculates that the speed at which the wine was distributed demonstrates that a conspiracy had been ongoing for several years prior to Plaintiff's discovery of it in 2014. (*Id.*)

The Complaint asserts the existence of an agreement among the three Alleged Theft Defendants regarding the theft of the wine and subsequent sale of the stolen wine. Specifically, Plaintiff alleges that ATD-Pina, ATD-Whitefield, and ATD-Borges conspired with and assisted each other with respect to the actual theft of the wine from Plaintiff's warehouse. (Compl. ¶ 8-10.) Plaintiff also alleges that ATD-Pina and ATD-Whitefield "fronted" the wine to ATD Borges, who did not pay them for the wine until he received checks from Shemali's company WOW, at which point ATD-Borges allegedly cashed the checks and paid ATD-Pina and ATD-Whitefield in cash. (Compl. ¶ 22.) There are no allegations of any similar agreements between the Alleged Theft Defendants and any of the Moving Defendants. Nor is there any allegation that ATD-Borges "fronted" the wine to Shemali or WOW, or that Shemali or WOW paid for the wine in cash. Indeed, there is not a single allegation that any of the Moving Defendants even knew that the wine

4

they were buying and/or selling was stolen.  Rather, the only allegation in that regard is Plaintiff's speculation that the Moving Defendants must have known that the wine was stolen because it supposedly was unavailable in the marketplace.

There also are no factual allegations that demonstrate that any of the Moving Defendants had any involvement with, or even knew, any of the Alleged Theft Defendants before February of 2014, or that any of the Moving Defendants was involved with the stolen wine for more than a few weeks during February and March of 2014.  Plaintiff also does not allege that any additional wine has been stolen since the time the theft was discovered in 2014.  To the contrary, Plaintiff admits that of the approximately $1,000,000 in wine that was allegedly stolen, approximately $700,000 of that wine has been recovered.  (Compl. ¶ 22.)

**ARGUMENT**

## I.        STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Eclectic Properties v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  Establishing whether a complaint states a facially plausible claim to relief "is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 995-96 (*quoting Iqbal*, 556 U.S. at 678-79).  First, a court should "identify pleadings that, because they are no more than **conclusions, are not entitled to the assumption of truth**."  *Id.* (emphasis

5

added).  Then, a court should "assume the veracity of well pleaded **factual allegations and**

**determine whether they plausibly** give rise to an entitlement to relief."  *Id.* (emphasis added).

In determining plausibility, a **court must consider an "obvious alternative explanation"**

for a defendant's behavior.  *Id.* (*citing Iqbal*, 556 U.S. at 682).

> When faced with two possible explanations, only one of which can be true
> and only one of which results in liability, plaintiffs cannot offer allegations
> that are 'merely consistent with' their favored explanation but are also
> consistent with the alternative explanation.  Something more is needed,
> **such as facts tending to exclude the possibility that the alternative**
> **explanation is true**, **in order to render plaintiffs' allegations plausible**.

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (affirming the

dismissal and stating that the "plaintiffs' allegations remain stuck in 'neutral territory,' [] because

they do not tend to exclude the possibility that their shares came from the pool of previously issued

shares") (emphasis added).  *See also Eclectic Properties*, 751 F.3d at 996-99 (affirming dismissal

of the plaintiff's RICO complaint because all of the facts were consistent with both the plaintiff's

theory of liability and an "innocent alternative" and, after removing the conclusory allegations,

"the complaint's factual allegations supports the Defendants' alternative explanation that the

changing sale prices reflected not fraud but changing market conditions.").  At bottom, a complaint

must be dismissed when a plaintiff fails to make the kind of factual allegations that move their

claims across the line from possible to plausible.  *See Twombly*, 550 U.S. at 570, *In re Century*, 729

F.3d at 1108; *Eclectic Properties*, 751 F.3d at 997.

## II.    PLAINTIFF'S FEDERAL RICO CLAIMS SHOULD BE DISMISSED

The Complaint asserts three RICO claims against the Moving Defendants.  Plaintiff alleges

that the Moving Defendants: (1) pursuant to 18 U.S.C. § 1962(b), acquired or maintained an

interest in, or control of, an enterprise engaged in interstate commerce through a pattern of

racketeering activity; (2) pursuant to 18 U.S.C. § 1962(c), participated in the conduct of the affairs

of an enterprise engaged in interstate commerce through a pattern of racketeering activity; and (3)

pursuant to 18 U.S.C. § 1962(d), conspired to engage in either or both of the above RICO

activities.

Even a cursory review of the Complaint establishes that, with respect to the Moving

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM

1    Defendants, these RICO claims cannot withstand scrutiny when judged by the pleading

2    requirements of RICO, and the pleading standard established by *Twombly* and *Iqbal*, and should

3    thus be dismissed.

4

5         **A.    Plaintiff's First and Second Claims For Relief – 18 U.S.C. §§ 1962(b) and (c) –
               Fail**

6         Plaintiff's first claim attempts to allege a RICO violation under 18 U.S.C. § 1962(b), which

7    requires, as to each defendant, that plaintiff allege: (1) the existence of an enterprise with which the

8    defendant was associated; (2) that the defendant acquired or maintained an interest in, or control

9    over, the enterprise; and (3) that the defendant acquired or maintained the interest or control

10   through a pattern of racketeering activity.  18 U.S.C. § 1962(b) ("Section 1962(b)"); *H.J. Inc. v.*

11   *Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989).  Plaintiff's second claim attempts to allege a RICO

12   violation under 18 U.S.C. § 1962(c), which requires that Plaintiff allege as to each defendant: (1)

13   the existence of an enterprise with which the defendant was associated; (2) that the defendant

14   participated in the conduct of the affairs of the enterprise; and (3) that the defendant participated in

15   the conduct of the affairs of the enterprise through a pattern of racketeering activity.  U.S.C. §

16   1962(c) ("Section 1962(c)"); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

17        While these claims under Sections 1962(b) and (c) have subtle differences, they share

18   several key substantive elements.  First, Plaintiff must allege the existence of an enterprise with

19   which the defendant was associated.  Second, Plaintiff must allege that the defendant either had an

20   interest in or control over the enterprise for Section 1962(b), or participated in the conduct of the

21   affairs of the enterprise for Section 1962(c).  Third, Plaintiff must allege that the defendant

22   acquired its interest in or control over the enterprise, or participated in the conduct of the affairs of

23   the enterprise, "through a pattern of racketeering activity."

24        Additionally, to have standing under either Section 1962(b) or (c), Plaintiff must also allege

25   causation—*i.e.*, "that the racketeering activity was both a but-for cause and a proximate cause of

26   [the plaintiff's] injury."  *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th

27   Cir. 2010) (*citing Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  *See also*

28

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM

1  *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1068 (C.D. Cal. 2000) (plaintiff's injury

2  must result from defendant's control or acquisition of a RICO enterprise); *Wagh v. Metris Direct,*

3  *Inc.*, 348 F.3d 1102, 1111 (9th Cir. 2003).

4

5              1.    Plaintiff Fails to Adequately Allege the Existence of an Enterprise
                     with which the Moving Defendants were Associated.

6

7          Here, Plaintiff makes the conclusory assertion that an association-in-fact enterprise existed

8  "to steal wine from Plaintiff's wine storage facility, then by sale, resale, distribution and/or

   delivery, offer the sale of the stolen wine at retail locations and on Internet websites" (the

9  "Enterprise").  (Compl. ¶ 30.)  An association-in-fact enterprise is "a group of persons associated

10 together for a common purpose of engaging in a course of conduct," which is proven by providing

11 both "evidence of an ongoing organization, formal or informal," and "evidence that the various

12 associates function as a continuing unit."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir.

13 2007) (*quoting U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

14                From the terms of RICO, it is apparent that an association-in-fact
                  enterprise must have at least three structural features: a purpose,
15                relationships among those associated with the enterprise, and longevity
                  sufficient to permit these associates to pursue the enterprise's purpose.
16
   *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).  Importantly, the "enterprise" is not the "pattern of
17
   racketeering activity"; rather, it is an entity separate and apart from the pattern of activity in which
18
   it engages.  *Doan v. Singh*, 617 Fed. Appx. 684, 686 (9th Cir. 2015) (*quoting Turkette,* 452 U.S. at
19
   583).  Thus, while an association-in-fact enterprise need not be a formally organized association, it
20
   nonetheless requires the following three elements: (1) a common purpose for engaging in a course
21
   of conduct; (2) an ongoing organization; and (3) the various associates functioning as a continuing
22
   unit.  *U.S. v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015) (*citing Odom*, 486 F.3d at 548).
23
          The Ninth Circuit has explained that, in determining whether a defendant is associated with
24
   an enterprise, "it is sufficient that the defendant know the general nature of the enterprise and know
25
   that the enterprise extends beyond his individual role."  *Christensen*, 801 F.3d at 985.  The purpose
26
   of making a plaintiff show that each of the defendants "had some knowledge of the nature of the
27

28                                                    8

enterprise is to avoid an unjust association" of a defendant with the wrongful acts of others.  *Id.*  In other words, a plaintiff must plausibly allege that a defendant is aware of the "'essential nature and scope' of [the plaintiff's alleged] enterprise and intended to participate in it."  *Id.* at 986.  Conclusory allegations that defendants "conspired, assisted, colluded or helped" are insufficient when it is "not clear what exactly each individual [defendant] did, when they did it, or how they functioned together as a continuing unit."  *Doan*, 617 Fed. Appx. at 686 (affirming the district court's dismissal and denial of any further leave to amend) (internal quotations omitted).

Even assuming the truth of Plaintiff's conclusory allegation that there was an association-in-fact enterprise to steal plaintiff's wine and resell it, Plaintiff has not plausibly alleged that any of the Moving Defendants was aware of the essential nature and scope of the enterprise, which according to Plaintiff was "to steal wine from Plaintiff's wine storage facility, then by sale, resale, distribution and/or delivery, offer the sale of the stolen wine at retail locations and on Internet websites" ("Enterprise") (Compl. at ¶ 38.)  The Complaint is devoid of any allegation that, prior to the alleged theft, any of the Moving Defendants was aware that the Alleged Theft Defendants even existed, let alone that they were planning to steal wine from Plaintiff's storage facility.  Indeed, except for Shemali, there are no allegations that any of the Moving Defendants ***ever knew at any time*** that any of the Alleged Theft Defendants even existed, let alone that together they constituted an organization with a common purpose of stealing Plaintiff's wine and then distributing the stolen wine.

Even with respect to Shemali, who is alleged to have dealt with ATD-Borges, Plaintiff does not allege that Shemali knew of the wine theft or that he and the Alleged Theft Defendants constituted an organization with a common purpose to steal wine, or even that Shemali or WOW knew that the wine they were purchasing from ATD-Borges was stolen.  Nor does Plaintiff allege any facts to plausibly suggest that any of the other Moving Defendants was aware that the wine was stolen when they allegedly purchased it from Shemali or WOW.

Tellingly, Plaintiff's sole allegation which even raises the possibility of any such awareness is the speculative assertion that "there is no way any of the defendants could have reasonably

9

believed that the wine was not stolen or came from legitimate sources, as the type and amounts of wine taken from Plaintiff for sale by the defendants were not at the time readily available—or even available at all—in the marketplace."  (Compl. at ¶ 27.)  However, Plaintiff does not allege that any of the Moving Defendants knew that the wine was "not available in the marketplace" or offer any explanation as to how such knowledge would plausibly lead to the conclusion that the wine had been stolen as opposed to having been purchased from a private collector.  There simply are no facts suggesting that any of the Moving Defendants had any knowledge of the nature and scope of the Enterprise alleged by Plaintiff.

Nor does Plaintiff allege any facts to demonstrate that any of the Moving Defendants functioned as a continuing unit with the Alleged Theft Defendants.  Plaintiff alleges no facts describing or detailing when any of the Moving Defendants first associated with any of the Alleged Theft Defendants or how long that association lasted.  Instead, the Complaint simply lists a barebones skeleton history leading up to the sale of the wine and then states in conclusory fashion, without any supporting facts, that each and every Moving Defendant was part of some grand scheme to steal wine from Plaintiff's storage facility and resell it.  This type of unjust lumping of the Moving Defendants with the wrongful acts of the Alleged Theft Defendants is insufficient to satisfy the requirement of pleading specific facts demonstrating that each of the Moving Defendants was associated with the RICO Enterprise alleged by Plaintiff.

Finally, there is an obvious and plausible alternative explanation of Plaintiff's allegations that the Complaint utterly fails to exclude: ATD-Borges' transaction with Shemali and WOW, and all subsequent transactions among the Moving Defendants, were standard arms-length transactions with no association whatsoever to the Enterprise that Plaintiff alleges.  It is at least equally plausible that Shemali and WOW purchased the wine from ATD-Borges with no knowledge whatsoever that the wine was stolen, much less stolen from Plaintiff's facility, and that Shemali's long-time customers BWE and Myers purchased the wine from their known supplier Shemali without any reason to suspect that it was stolen.  Similarly, if Hi-Time actually purchased any of the wine at issue, it also had no reason to suspect that it was stolen.  And, to the extent that the

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM

Rodriguezes and Sandi's may have been "conduits" in the delivery of the wine to Myers, they would have had absolutely no way of knowing that the wine was stolen.  In short, Plaintiff's allegations do not even come close to excluding the possibility that the Moving Defendants were in no way associated with the Enterprise alleged by Plaintiff but were instead simply involved in standard arms-length transactions, Shemali and WOW with ATD-Borges and the others among themselves.

2.    <u>Plaintiff Fails to Adequately Allege that any of the Moving<br>Defendants Acquired an Interest in or Control Over the Enterprise.</u>

Since Plaintiff has failed to allege facts sufficient to demonstrate that any of the Moving Defendants was even associated with the purported Enterprise, *ipso facto* the allegations are also insufficient to demonstrate that any of them acquired or maintained any interest in or control over the purported Enterprise under Section 1962(b).  Simply asserting in conclusory fashion that "the defendants, and each of them, did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise" is not enough without alleging any specific facts that support that conclusion.  (Compl. ¶ 29.)

Additionally, Plaintiff must allege that each of the Moving Defendants acquired an interest in or control of the purported Enterprise through racketeering activity.  Because Plaintiff has not alleged that the Moving Defendants' acquired an interest in or control of the purported Enterprise, let alone did so through racketeering activity, it has failed to adequately plead a Section 1962(b) violation.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 920 (C.D. Cal. 2011).

Indeed, Section 1962(b) was intended to apply to a RICO enterprise that is a legal entity like a partnership or corporation.  *See Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237, 1240-41 (E.D. Mich. 1995) *aff'd*, 129 F.3d 1266 (6th Cir. 1997) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 182 n.7 (1993) (discussing how the congressional intent of § 1962(b) was to prevent racketeers from acquiring control of businesses)); *see also Teague v. Bakker*, 35 F.3d 978, 994–95 n.23 (4th Cir.1994) *cert. denied*, 513 U.S. 1153 (1995) (upholding jury instruction that the "interest" contemplated by Section 1962(b) meant acquiring stock or ownership equity and also entailed gaining "actual day-to-day involvement in the management and operation" of the

11

1    enterprise).  Although the Ninth Circuit has held that a finding of "control" over the enterprise

2    under Section 1962(b) need not be formal control and is determined by the circumstances of each

3    case (*see Ikuno v. Yip*, 912 F.2d 306, 310 (9th Cir. 1990)), Moving Defendants are unaware of any

4    case within the Ninth Circuit in which a plaintiff successfully pled a Section 1962(b) violation

5    against an association-in-fact enterprise.  Since Plaintiff does not allege a legal entity enterprise,

6    but rather an association-in-fact enterprise, it has failed to plausibly state a Section 1962(b) claim.

7                      3.    Plaintiff Fails to Adequately Allege that any of the Moving
                            Defendants Participated in the Conduct of the Affairs of the
8                            Enterprise.

9            In order to adequately allege that a defendant participated in the conduct of the affairs of the

10   enterprise under Section 1962(c), the plaintiff must allege facts that plausibly demonstrate that each

11   defendant had some part in ***directing*** the enterprise's affairs.  *Reves*, 507 U.S. at 179.  In

12   accordance with the Supreme Court's "operation and management" test for RICO defendants, the

13   Ninth Circuit has looked at whether a party: (1) gives or takes direction in the enterprise; (2)

14   "occup[ies] a position in the chain of command" of the enterprise; (3) "knowingly implementing

15   decisions" of the enterprise; or (4) is "indispensable to achievement of the enterprise's goal."

16   *Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008).  Section 1962(c)'s "managerial

17   control" requirement applies without regard to whether the alleged RICO enterprise is a legal entity

18   or, as asserted in the Complaint, an association-in-fact enterprise.  *Id.*

19           Here, Plaintiff fails to allege facts describing or detailing any kind of "operation or

20   management" of the Enterprise by any of the Moving Defendants.  There are simply no alleged

21   facts whatsoever demonstrating that any of the Moving Defendants' activities were undertaken at

22   the direction of the Alleged Theft Defendants or any other member of the alleged Enterprise, much

23   less that they knowingly implemented the Enterprise's decisions.  There is no description of any

24   type of "chain of command" or the relative positions of each Moving Defendant in such a chain.

25   *See Eclectic Properties v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 WL 713289, at

26   *7 (N.D. Cal. Mar. 5, 2012) *aff'd sub nom.* 751 F.3d 990 (9th Cir. 2014) (dismissing a Section

27   1962(c) claim where the complaint failed to allege that the "defendant acted under the direction of

28

                                               12

the enterprise or occupied a position in the chain of command"). Nor are there any allegations that the Moving Defendants' roles in the alleged Enterprise were somehow vital or indispensable to the Enterprise—*e.g.*, there are no allegations that Shemali was the only one who could have purchased the wine from ATD-Borges, or that Shemali could have resold the wine to only the other Moving Defendants.

Plaintiff asserts, in conclusory fashion, that each of the Moving Defendants conducted the affairs of the Enterprise by "engaging in an … enterprise." (Compl. ¶ 38.) First, merely being 'engaged' in an enterprise with no showing of any managerial control over the affairs of the enterprise is insufficient for Section 1962(c) liability. *Walter*, 538 F.3d at 1249 (stating that simply being "involved," "part of," or "used to further the wrongful efforts" of an alleged enterprise is insufficient to establish the "conduct of affairs" element) (*citing Reves*, 507 U.S. at 177-79). Second, even if one or more of the Moving Defendants purchased the wine, provided shipping addresses, and/or attempted to resell the wine, that does not adequately allege that they directed or managed the activities of the purported Enterprise. *See Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (attorney who prepared partnership agreement and assisted in bankruptcy did not exercise managerial control); *Webster v. Omnitron Int'l Inc.*, 79 F.3d 776, 789 (9th Cir. 1996) (corporate officer who made statements promoting fraudulent scheme determined to have a "purely ministerial" rather than managerial role in enterprise). Indeed, merely rendering services to an alleged enterprise does not establish that a defendant directs or controls a RICO enterprise for purposes of a Section 1962(c) violation. *Id.* at 1246, 1249 (dismissing a Section 1962(c) claim against an attorney because the attorney failed to satisfy the operation and management test by acting in his capacity as a lawyer). The absence of any allegations that Moving Defendants' were in any way involved in the "conduct of the affairs" of the Enterprise requires dismissal of Plaintiff's section 1962(c) claim.

4.   Plaintiff Fails to Adequately Allege a "Pattern" of Racketeering Activity.

RICO is designed to prevent ongoing or long term criminal activity. *See H.J. Inc.*, 492 U.S. at 241-42; *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 365-66 (9th Cir. 1992). Thus, to

13

withstand scrutiny, a RICO complaint must adequately allege a "pattern" of racketeering that has "open-ended continuity" or "closed-ended continuity," both of which are a "centrally temporal concept." *Id.* "The pattern requirement must be satisfied as to each defendant individually." *Eclectic Properties*, *supra*, 2012 WL 713289, at *9 (*citing Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *U.S. v. Persico,* 832 F.2d 705, 714 (2d Cir.1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise....").

"Open-ended continuity" requires "past conduct that by its nature projects into the future with a threat of repetition." *Religious Tech.*, 971 F.2d at 366 (*quoting H.J. Inc.*, 492 U.S. at 241-42). While Plaintiff makes no explicit allegation of closed or open-ended continuity, Plaintiff actually describes closed-ended continuity, an alleged scheme with a concrete beginning and ending. That is to say, the alleged actions were "finite in nature"—beginning when the wine was first stolen from Plaintiff's storage facility and ending at some point during 2014. Indeed, the alleged facts indicate that the purported Enterprise has ceased activity, as Plaintiff does not allege that any additional wine has been stolen since the time the theft was discovered in 2014, ATD-Pina is no longer an employee of Plaintiff, and there are no facts indicating that ATD-Pina or anyone else has made any attempt to breach Plaintiff's increased security. *See Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (affirming dismissal where alleged actions "were finite in nature" and the alleged enterprise had ceased activity). Furthermore, Moving Defendants cannot continue to traffic in or distribute Plaintiff's wine if it is no longer being stolen, and there are no facts indicating that any of the Moving Defendants has even attempted (albeit unknowingly) to traffic in or distribute Plaintiff's wine since 2014. There are simply no allegations to plausibly suggest Moving Defendants' alleged activities pose a threat of future criminal conduct to Plaintiff or anyone else. Accordingly, Plaintiff alleges a pattern of closed-ended continuity.

"Closed-ended continuity" requires "a series of related predicates extending over a **substantial** period of time." *Religious Tech.*, 971 F.2d at 366 (emphasis added). Predicate acts lasting only a few weeks or months do not constitute a "substantial period of time," nor does it

14

reflect the long term criminal conduct to which RICO was intended to apply.  *Id.* at 366-67; *H.J. Inc.*, 492 U.S. at 241-42.  While the Ninth Circuit has rejected a bright line rule of one year to satisfy a sufficient pattern of racketeering activity, courts have rarely if ever found predicate acts lasting less than one year sufficient to meet a pattern of racketeering activity.  *Eclectic Properties*, *supra*, 2012 WL 713289, at *10 (*citing Religious Tech.*, 971 F.2d at 366–67 ("We have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year.")).

Here, Plaintiff alleges that the Moving Defendants' racketeering activity involves the trafficking of the stolen wine, and the distribution of that wine "through purportedly 'legitimate' distribution channels," such as retail locations and Internet websites.  (Compl. ¶¶ 3 and 27.)  There are no facts to plausibly suggest that the predicate acts Plaintiff asserts against each of the Moving Defendants extended over a substantial period of time.  While Plaintiff does assert in conclusory fashion that each defendant engaged in illegal acts "[f]or at least the three years preceding the filing of this complaint," this allegation is wholly devoid of any factual support.  In fact, this conclusory allegation is inconsistent with the more specific facts alleged in the Complaint, which demonstrate that the alleged predicate acts asserted against Moving Defendants lasted no longer than a few weeks.  For example, Plaintiff attached eight checks to the Complaint, which were issued by WOW to ATD-Borges. (Compl., Exh. A.)  These checks extend over a period of only a few weeks, from February 20, 2014 to March 10, 2014.  (*Id.*)  Plaintiff also alleges that the stolen wine was distributed into the marketplace within a "short time—often as short as 24 hours" after being purchased from ATD-Borges, further supporting the fact that Moving Defendants' alleged predicate acts extended no longer than, at the very most, a few weeks.  Alleged schemes of such limited scope and duration do not constitute *continuing* racketeering activity, nor are there any allegations to plausibly suggest Moving Defendants' conduct posed a threat of ongoing criminal activity.  *H.J. Inc.*, 492 U.S. at 242 (predicate acts extending over only "a few weeks or months and threatening no future criminal conduct" do not satisfy a "pattern" of racketeering activity).

5.    Plaintiff Fails to Adequately Allege "Causation" (Standing).

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM

1    To survive dismissal, Plaintiff "must show that the defendant's RICO violation was not

2  only a 'but for' cause of his injury, but that it was a proximate cause as well."  *Oki Semiconductor*

3  *Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002).  Proximate cause of an

4  injury is "a substantial factor in the sequence of responsible causation."  *Id.*  For RICO purposes,

5  proximate causation requires more than just foreseeable consequences; rather, it requires a "***direct***

6  ***relationship***" between the injury asserted and the injurious conduct alleged.  *See Id.*; *Rezner*, 630

7  F.3d at 873; *Hemi Grp., LLC v. N.Y.C., N.Y.*, 559 U.S. 1, 12 (2010) (rejecting RICO liability for

8  consequences that are only foreseeable without some direct relationship).

9    A Section 1962(c) causation issue similar to the instant case was addressed by the Ninth

10  Circuit in *Oki*, *supra*.  In *Oki*, the plaintiff's RICO claims against a bank employee were predicated

11  on laundering the proceeds resulting from the sale of stolen computer chips.  The Ninth Circuit

12  affirmed dismissal of the RICO claim as to the bank employee, explaining that:

13    Although [the plaintiff] alleged that [the defendant] used her "training and
      position as a Wells Fargo employee to conduct and facilitate numerous
14    transactions" and "to convert and transfer the [proceeds from the stolen
      computer chips] in order to avoid detection by law enforcement," **these**
15    **allegations suggest, at most, that [the defendant] laundered the**
      **proceeds *after* the Conspiracy stole the semiconductors and sold them**.
16    Indeed, [the defendant's] financial wizardry, as alleged by [the plaintiff],
      lacks any "direct relationship" to the armed robbery at [the plaintiff's]
17    semiconductor manufacturing plant.

18
      **The direct and proximate cause of [the plaintiff's] loss was not [the**
19    **defendant's] money laundering at Wells Fargo; *it was theft***.  Only after
      the theft occurred and the semiconductors were sold could [the defendant]
20    launder the proceeds.  Her role in the Conspiracy, while important, was
      not a substantial factor in the sequence of responsible causation.  Thus,
21    even reading the complaint in the light most favorable to [the plaintiff], we
      conclude that none of the allegations suggests that [the defendant] directly
22    and proximately caused [the plaintiff's] loss.

23
   *Oki*, 298 F.3d at 774 (emphasis in original and added) (internal citations and quotations thereto
24
   omitted).
25
      Here, as in *Oki*, the direct and proximate cause of Plaintiff's loss was the ***theft***.  Just as the
26
   defendant in *Oki* could not have laundered proceeds from the stolen semiconductors unless and
27
   until the semiconductors were stolen, likewise, the Moving Defendants could not have trafficked or
28
                                                    16

1   distributed stolen wine unless and until the wine was stolen.  And Plaintiff does not allege that any

2   of the Moving Defendants assisted with or conspired to steal the wine.

3          Even if the Moving Defendants received some of the stolen wine and/or attempted to resell

4   some of the wine, these allegations lack any "direct relationship" to the actual physical theft at

5   Plaintiff's wine storage facility.  The Complaint even asserts that the Moving Defendants

6   purchased and/or received the stolen wine *after* the Alleged Theft Defendants had already stolen it

7   from Plaintiff.  In addition, the Complaint fails to exclude the completely innocuous and very real

8   possibility that the Alleged Theft Defendants stole the wine before they even knew the existence or

9   identity of any of the Moving Defendants.  Nor does the Complaint foreclose the possibility that

10  ATD-Borges could have sold the wine to any interested buyer, which of course means that the

11  Moving Defendants' did not directly or proximately cause the theft.  Even if the Moving

12  Defendants' provided "support" (albeit unknowingly) to the theft by purchasing and distributing

13  the stolen wine, that does not mean their actions directly caused the theft.  *See Oki*, 298 F.3d at

14  774.  As in *Oki*, the Moving Defendants' alleged role of trafficking and distributing the stolen wine

15  was simply not a "substantial factor in the sequence of responsible causation" for the theft.  *Id.*

16  Thus, the Moving Defendants are not alleged to have caused Plaintiff's injury and, as a result,

17  cannot be held accountable for the Alleged Theft Defendants' alleged injurious actions.

18  Accordingly, Plaintiff has failed to adequately allege a Section 1962(c) violation as to the Moving

19  Defendants.

20         To adequately allege proximate causation under Section 1962(b), "a plaintiff must allege an

21  'injury from the defendant's acquisition or control of an interest in a RICO enterprise' *separate*

22  *from* an injury flowing from the racketeering activity itself."  *In re Toyota*, 785 F. Supp. 2d at 921

23  (emphasis added).  *See also U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1060

24  n.12 (N.D. Cal. 1991) ("For example, an owner of an enterprise infiltrated as a result of

25  racketeering activity would have standing to sue because he was injured by the defendant's

26  acquisition of control over his enterprise.").  Because Plaintiff has not alleged that any Moving

27  Defendant acquired an interest in or control over the Enterprise (*see* pages 11-12, *supra*), nor any

28

1   injury other than the economic loss flowing from the racketeering activity, Plaintiff has not stated a

2   claim under Section 1962(b).

3              **B.    Plaintiff's Third Claim for Relief – 18 U.S.C. § 1962(d) – Fails**

4              In addition to attempting to plead a claim for RICO injuries under Sections 1962(b) and (c),

5   Plaintiff also attempts to plead a RICO conspiracy under Section 1962(d).  As a threshold matter,

6   Plaintiff's failure to adequately plead the substantive elements of RICO under Section 1962(b) or

7   (c) requires dismissal of Plaintiff's Section 1962(d) RICO conspiracy claim.  *See Religious Tech*,

8   971 F.2d at 367 ("Because we find that [the plaintiff] has failed to allege the requisite substantive

9   elements of RICO, the conspiracy cause of action cannot stand."); *Howard v. Am. Online Inc.*, 208

10  F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if

11  they do not adequately plead a substantive violation of RICO.").

12             Moreover, as discussed above at pages 8-11, Plaintiff fails to adequately plead facts from

13  which a finding could be made that Moving Defendants were aware of the nature and scope of the

14  Enterprise, and then consciously agreed to join it.  *See Howard*, 208 F.3d at 751; *Baumer*, 8 F.3d at

15  1346 (explaining that a "conspiracy to violate RICO requires a showing that defendant was aware

16  of the essential nature and scope of the enterprise and intended to participate in it.") (internal

17  quotations omitted).  Despite Plaintiff's conclusory allegation that all of the defendants "engag[ed]

18  in an agreement, enterprise and conspiracy," Plaintiff fails to allege any facts detailing or

19  describing an agreement by any of the Moving Defendants to join or take part in the Enterprise.

20             The only allegations which remotely bear on the existence of such an agreement are

21  Plaintiff's allegations that, after Moving Defendants Shemali and WOW purchased the wine from

22  ATD-Borges, the other Moving Defendants received the wine almost immediately and, soon after

23  receiving the wine, posted it for sale on their respective websites.  (Compl. ¶ 27.)  The choice to

24  have wine (a perishable good) shipped in an expedited manner, or the efficiency of a company to

25  quickly sell or list that wine for sale, does not establish a RICO conspiracy claim against the

26  Moving Defendants.  Nor does simply alleging that the Moving Defendants agreed to do business

27  with an alleged Enterprise.  *See Alves v. Players Edge, Inc.*, No. 05CV1654WQH(CAB), 2007 WL

28

18

072485-000004
DRAFT 02/25/16 11:04AM

1   6004919, at *12 (S.D. Cal. Aug. 8, 2007).  Finally, contrary to Plaintiff's contention, it alleges no

2   facts to plausibly support the allegation that the Moving Defendants intended to provide the

3   purported Enterprise with an air of "legitimacy."  (Compl. ¶ 27.)

4   **III.    PLAINTIFF'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED**

5           **A.    Plaintiff's Fourth Claim for Relief – Unfair Competition – Fails**

6           Plaintiff's Business and Professions Code § 17200 ("Unfair Competition Law" or "UCL")

7   claim is based on Moving Defendants' purported "unlawful conduct."  (Compl. ¶ 54.)  The UCL

8   "creates an independent action when a business practice violates some other law."  *Walker v.*

9   *Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170 (2002).  Thus, to state a claim for an

10  "unlawful" business practice under the UCL, a plaintiff must assert the violation of another law.

11  *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 20 Cal. 4th 163, 180 (1999).  If a plaintiff fails

12  to adequately plead a claim under a "borrowed" law, then the plaintiff also fails to adequately plead

13  a UCL claim.  *See, e.g., Smith v. State Farm*, 93 Cal. App. 4th 700, 718 (2001).

14          Here, Plaintiff has apparently predicated its "unlawful" UCL claim on its RICO,

15  conversion, and embezzlement claims.  However, as discussed above and below, Plaintiff has

16  failed to state a claim against Moving Defendants under any of these other laws.  Given Plaintiff's

17  failure to allege a predicate violation of law, its "unlawful" UCL claim against Moving Defendants

18  must be dismissed.  *See Herrejon v. Ocwen Loan Serv.*, 980 F. Supp. 2d 1186, 1205 (E.D. Cal.

19  2013).

20          **B.    Plaintiff's Fifth Claim for Relief – Conversion – Fails**

21          Plaintiff does not allege that any of the Moving Defendants was involved in any way with

22  the theft of wine from Plaintiff's storage facility.  Plaintiff also states that approximately $700,000

23  of the alleged $1,000,000 of stolen wine has been recovered and does not allege that any of the

24  wine purchased by any of the Moving Defendants was not recovered, nor that any of the Moving

25  Defendants prevented Plaintiff from re-taking possession of any of the stolen wine.

26          Nonetheless, Plaintiff alleges that Moving Defendants are liable for civil conspiracy of

27  conversion.  (Compl. ¶ 57.)  Liability for civil conspiracy requires: (1) formation of the conspiracy

28

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

LA 51842044
072485-000004
DRAFT 02/25/16 11:04AM

1  (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the

2  wrongful acts); and (3) damage resulting from the operation of the conspiracy.  *People v.*

3  *Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 137 (2003) (*citing Applied Equip. Corp. v. Litton*

4  *Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994)).  "In addition to those three elements … participants

5  in a conspiracy also **must know that their conduct is wrongful**."  *Beaumont*, 111 Cal. App. 4th at

6  137 (emphasis added); *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784 (1979) (stating that one

7  harmed by a conspiracy "is entitled to damages from those defendants who concurred in the

8  tortious scheme with knowledge of its unlawful purpose."); *see also*, *e.g.*, *Kidron v. Movie*

9  *Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (conspiring defendants must have actual

10  knowledge of the wrongful nature of the scheme).

11      In conclusory fashion, Plaintiff asserts that each of the defendants entered into a "civil

12  conspiracy—of which each committed at least one unlawful act—in conspiring to and in fact

13  converting wine owned and/or controlled by Plaintiff for the purposes of selling and/or re-selling

14  the wine through 'legitimate' distribution channels."  (Compl. ¶ 57.)  The Complaint, however, is

15  wholly devoid of any facts to plausibly demonstrate that Moving Defendants entered into any type

16  of agreement regarding the theft of wine from Plaintiff's storage facility.  Nor are there any facts to

17  plausibly demonstrate that any of the Moving Defendants knew and agreed to sell stolen wine since

18  there are no facts to demonstrate that they knew the wine they were selling and/or buying was

19  stolen.

20      As previously shown above at pages 9-10, Plaintiff's assertion that the wine was 'not

21  readily available in the marketplace' is not a fact from which one could plausibly infer that any of

22  the Moving Defendants had actual knowledge that the wine was not readily available in the

23  marketplace or that such knowledge would have led them to know the wine was stolen, or to know

24  that their distribution of the wine was wrongful.  (Compl. ¶ 63.)  Also as previously explained,

25  there are no facts to exclude the innocuous alternative explanation that Shemali believed that he

26  and WOW were conducting typical, arms-length purchases from ATD-Borges, or that the other

27  Moving Defendants were doing the same in purchasing wine from Shemali and/or WOW.

28

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM

1

**C.      Plaintiff's Sixth Claim for Relief – Embezzlement – Fails**

2        Plaintiff's embezzlement claim does not state a claim for which relief can be granted.

3   "Embezzlement is the fraudulent appropriation of property by a person to whom it has been

4   entrusted."  Cal. Penal Code § 503.  Under California law, embezzlement is a criminal act; there is

5   no civil cause of action for embezzlement, and Plaintiff identifies none.  *See Mohebbi v. Khazen*,

6   50 F. Supp. 3d 1234, 1257 (N.D. Cal. 2014) (dismissing Plaintiff's embezzlement claim with

7   prejudice because "there is no civil claim for embezzlement under California law").  Even if there

8   were such a civil claim under California law, Plaintiff alleges no facts demonstrating that it

9   entrusted any of the Moving Defendants with its wine.  Plaintiff's embezzlement claim must

10  therefore be dismissed.

11

12  **IV.     CONCLUSION**

13       For all the foregoing reasons, Moving Defendants respectfully request dismissal of

14  Plaintiff's Complaint, without leave to amend, together with such other relief that the Court deems

15  just and proper.

16

17  Dated:  February 25, 2016                            NIXON PEABODY LLP

18

19                                              By:      */s/ John R. Foote*
                                                     _____
20                                                   GREGORY O'HARA (SBN: 131963)
                                                     JOHN R. FOOTE (SBN: 99674)
21                                                   KARL K. SUNG  (SBN: 294120)
                                                     Attorneys for Defendants Michael Shemali,
22                                                   Wines of the World, LLC, Tri Cities Liquor &
                                                     Spirits, LLC, Belmont Wine Exchange, LLC,
23                                                   Matt Myers, Hi-Time Wine Cellars, Sandra
                                                     Rodriguez, Eduardo Rodriguez, and Sandi's Pet
24                                                   Place Inc.

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES
CASE No. 3:15-cv-5309 EMC

072485-000004
DRAFT 02/25/16 11:04AM