UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.P.D. CONSOLIDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOSE PINA, et al.,<br><br>Defendants. | Case No. 15-cv-05309-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Docket No. 152 |

## I. INTRODUCTION

Plaintiff H.P.D. Consolidation Inc., a provider of wine storage and logistics, brought the present action. Defendants are Jose Pina, aka Jose Piedra ("Pina"); Edwin Whitefield ("Whitefield"); David Borges ("Borges"); Michael Shemali ("Shemali"); Wines of the World, LLC, dba Hooked on Wine ("WOW"); Tri Cities Liquor & Spirits, LLC, dba Mid Columbia Wine & Spirits ("Tri Cities"); Hi-Time Wine Cellars ("Hi-Time"); Matt Myers, individually and dba Matt Myers Wine ("Myers"); Sandra Rodriguez and Eduardo Rodriguez ("the Rodriguezes"); Sandi's Pet Place; and Belmont Wine Exchange, LLC ("Belmont Wine") (together, Shemali, WOW, Tri Cities, Hi-Time, Myers, the Rodriguezes, Sandi's Pet Place, and Belmont Wine are "Receiving Defendants"). Plaintiff alleges that Defendants engaged in a wine theft ring in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 2315 (interstate transportation of stolen property), and 18 U.S.C. § 1341 (mail fraud).

Pending before the Court is Receiving Defendants' motion for attorneys' fees under 28 U.S.C. § 1927 and the Court's inherent power. Receiving Defendants allege that Plaintiff and Plaintiff's Counsel unreasonably and vexatiously multiplied the proceedings in this action; and that they initiated and pursued this action in bad faith. This Court grants Receiving Defendants'

1  motion for attorneys' fees in the amount of $23,737.40 under 28 U.S.C. § 1927 but denies request
2  for sanctions under the Court's inherent power.

## II.  BACKGROUND

A.  Factual Background

Plaintiff HPD Consolidation provides wine storage and logistics to the wine industry. Docket No. 135 ("Second Amended Complaint" or "SAC") ¶ 19.  According to the SAC, the Receiving Defendants were involved in an enterprise to steal from Plaintiff's facility and then sell the wines through various outlets.  Plaintiff discovered that the wine was stolen when an employee of a wine broker approached Plaintiff stating that she had seen Plaintiff's wine for sale on Hi-Time's website.  *Id.* ¶ 20.  Subsequently, Plaintiff investigated the wine theft.  *Id.*

In particular, Plaintiff alleges that Defendants formed, operated, and maintained a criminal enterprise to steal wine from storage facilities in Napa County, California, including Plaintiff's facility.  *Id.* ¶ 22(a).  Specifically, Plaintiff alleges that Defendant Pina took the wine from the facility on at least five occasions.  *Id.* ¶ 22(b), (f).  Pina, a night shift supervisor at Plaintiff's facility, removed the wine from Plaintiff's facility from 2013 to the early part of 2014.  *Id.* ¶ 22(b). Defendant Whitefield assisted and facilitated Defendant Pina in the theft by using Whitefield's truck to transport stolen wine to Whitefield's shop.  *Id.*  Subsequently, Defendants Pina and Whitefield transported the wine to Defendant Borges, a Senior Vice President in information technology at Bank of America.  *Id.* ¶ 22(b), (d).  Defendant Borges sold the transported wine to Defendant Shemali, a wine broker, and his entities (WOW and Tri-Cities), who in turn sold a portion of the wine to Defendants Belmont Wine and Myers.  *Id.* ¶ 22(g).  Myers stored the purchased wine at Sandi's Pet Place.  *Id.* ¶ 22(r).  Myers also transported the wine at Sandi's Pet Place to a storage locker at Hi-Time, an online wine seller, or back to his home in Arizona.  *See id.* ¶ 22(p).

The following image depicts the sequence of events described above:



After the theft of wine was discovered and presumably reported to law enforcement, Detective Brad Chambers of the Napa County Sherriff's office called Defendant Shemali on March 17, 2014, and notified him that the wine he purchased from Borges was stolen. Docket No. 152-24 Shemali Declaration ¶ 5; Docket No. 152-21 Khouri Declaration ¶ 5; Docket No. 152-23 Myers Declaration ¶ 7. Defendant Shemali then called Defendant John Khouri of Belmont Wine and Defendant Myers to notify them of the stolen wine. *Id.* Defendants Myers and Belmont Wine agreed to return the wine remaining in their possession, and, in exchange, Shemali agreed to reimburse them for the amount paid for the wine. *Id.*

On March 26, 2014, Peter Stravinski, the owner of Plaintiff H.P.D. Consolidation, and Defendant Shemali spoke by telephone regarding the stolen wine. After the call, Stravinski sent an email to Defendant Shemali memorializing the conversation between Stravinski and Defendant Shemali. *See* Shemali Declaration Ex. A; Docket No. 157 Stravinski Declaration ¶ 10. The email provides that Shemali would

> (a) send Stravinski complete list of the wines Defendant Shemali and his companies obtained from Borges, Whitefield, and Pina; (b) provide a list of all people and entities to whom stolen wine was sold; (c) send copies of all checks with which Shemali paid for the stolen wine; (d) return the stolen wine held by Shemali and his companies; (e) advise Defendant Myers and Belmont Wine Exchange that they were in possession of stolen wine; and (f) make commercially reasonable efforts to recompense Myers and Belmont Wine Exchange for the stolen wine.

Stravinski Declaration ¶ 10. The email further notes that the goal of returning the wine and notifying Defendants Myers and Belmont Wine of the stolen wine is to "quickly and completely demonstrate that none of us knowingly traffics in stolen property." Shemali Declaration Ex. A ¶ (f).

On April 4, 2014, Defendant Shemali and Stravinski, accompanied by counsel for HPD, Carl Motschiedler, met in Washington to discuss the disposition of the wine. *See* Shemali Declaration ¶ 7; Stravinski Declaration ¶ 18; Docket No. 156 Motschiedler Declaration ¶ 3. At the meeting, Shemali provided Plaintiff with spreadsheets detailing his transactions with Borges. SAC ¶ 22(i); *id.* Exs. B, C.

Subsequently, Plaintiff spoke with Myers regarding Myers' role in the wine theft. *See*

3

SAC ¶ 22(p). Myers stated "Plaintiff would have a difficult time 'proving' that the stolen wine was ever in Myers' possession because he made sure the shipping labels were not in his name." *Id*.

B. <u>Procedural History</u>

Plaintiff filed this lawsuit on November 19, 2015. *See* Docket No. 1 ("Original Complaint"). Receiving Defendants moved to dismiss Plaintiff's Original Complaint on February 25, 2016. *See* Docket No. 89 ("Motion to Dismiss the Original Complaint"). Rather than opposing this motion, Plaintiff filed an amended complaint. *See* Docket No. 96 ("First Amended Complaint" or "FAC"). Receiving Defendants moved to dismiss the FAC on April 4, 2016. *See* Docket No. 102.

In response to Plaintiff's opposition, counsel for Receiving Defendants sent a letter to Plaintiff's Counsel. *See* Docket No. 152-5 Foote Declaration Ex. 4. The letter warned that, pursuant to Fed. R. Civ. P. 11(c)(2), sanctions would be filed against Plaintiff's Counsel because the FAC and the opposition to the motion to dismiss were without any evidentiary support. *See id*. The motion proceeded to hearing.

This Court dismissed the FAC but granted Plaintiff leave to amend. *See* Docket No. 134 (September 22, 2016 Civil Minutes). This Court required Plaintiff to provide in any further amended complaint:

> greater specificity with regard to each Defendant's knowledge of and participation in the alleged enterprise; allegations as to the enterprise separate from the alleged racketeering; facts supporting the alleged mail fraud; and, where Plaintiff wishes to state a claim under 18 U.S.C. § 1962(b) and (c), facts showing the relevant Defendant had interest in, control over, and/or conducted the alleged enterprise.

*Id.*

Plaintiff filed the Second Amended Complaint on October 14, 2016. *See* SAC. Receiving Defendants moved to dismiss the SAC and served a Rule 11 motion seeking monetary sanctions in the form of attorneys' fees. *See* Foote Declaration ¶ 7. Pursuant to Rule 11 Safe Harbor Provision, Fed. R. Civ. P. 11(c)(2), Receiving Defendants demanded that Plaintiff withdraw the SAC within twenty-one days and dismiss all Receiving Defendants from the action. *See* Foote

4

Declaration, Ex. 5.

On November 28, 2016, Plaintiff's Counsel filed a request to voluntarily dismiss the action against all Receiving Defendants without prejudice. *See* Docket No. 150. On November 29, 2016, this Court issued an order dismissing the case. *See* Docket No. 151.

Before this Court is Receiving Defendants' motion to recover attorneys' fees pursuant to 28 U.S.C. § 1927 and the Court's inherent power. *See* Docket No. 152 ("Motion for Attorneys' Fees). Receiving Defendants contend sanctions are appropriate because Plaintiff's Counsel unreasonably and vexatiously multiplied the proceedings in this action and initiated and pursued this action in bad faith. *Id.*

### III.   DISCUSSION

A.   Sanctions Under 28 U.S.C. § 1927

   1.   Legal Standard

Section 1927 provides for attorneys' fees when an attorney multiplies proceedings unreasonably and vexatiously. *See* 28 U.S.C.A. § 1927 (West). Section 1927 sanctions do not apply to initial proceedings, but instead apply to subsequent procedures because such sanctions are designed to deter unnecessary multiplication of proceedings and tactics. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

Sanctions may be awarded under Section 1927 when attorney behaves recklessly and frivolously. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001); *see also B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002) (holding that recklessness plus knowledge or asserting a frivolous argument which multiplies judicial proceedings sufficiently supports an award of sanctions under Section 1927). Recklessness means "a departure from ordinary standards of care that disregards a known or obvious risk of material misrepresentation." *See In re Girardi*, 611 F.3d 1027, 1038 n.4 (9th Cir. 2010). Frivolousness "should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id.* at 1062. A frivolous filing is one "that is both baseless and without reasonable competent inquiry." *Id.* (quoting *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005)).

Plaintiff acted recklessly and frivolously in filing the SAC. In the Court's order dismissing

1 FAC ("the Court's Order"), the Court had required Plaintiff to properly amend its complaint to
2 assert (1) greater specificity regarding each Defendant's knowledge of and participation in the
3 alleged enterprise; (2) allegations as to the enterprise separate from the alleged racketeering; (3)
4 facts supporting the alleged mail fraud; and (4) facts showing the relevant Defendant had interest
5 in, control over, and/or conducted the alleged enterprise. *See* September 22, 2016 Civil Minutes.
6 However, in filing the SAC, Plaintiff failed to comply with all of the Court's directions; much of
7 the SAC continues to lack the requisite specificity.

        2.       <u>Greater Specificity to Each Defendant's Knowledge</u>

           a.      <u>Shemali</u>

In the FAC, Plaintiff conclusorily alleged Shemali's knowledge, asserting that Borges "determined the types and amounts of wine to steal" by "working with . . . Shemali", FAC ¶ 21(d), and that Borges organized and controlled the theft and "then communicated [to] Shemali . . . what wine had been stolen and was available," *id* ¶ 21(g). *See* September 22, 2016 Civil Minutes.

In the SAC, Plaintiff added more specific allegations to support the assertion that Shemali must have known that the wine he obtained was stolen. Specifically, the SAC provides that "no person or entity engaged in the commercial or retail sale or distribution of wine (as was Shemali) could have reasonably believed that someone like Whitefield would have had access to the quality wines that were stolen." SAC ¶ 22(c). The SAC also alleges that the wines sold by Shemali to Belmont Wine and Tri-Cities were "not available anywhere in the United States in the quantities, vintage and price being offered by Borges [who is an unlicensed wine broker] and it should have be[en] obvious to them that Borges and his associates were trafficking in stolen wine." *Id.* ¶ 22(k).

The specific allegations in the SAC support the assertion that Shemali knew the wine was stolen. Thus, Plaintiff satisfied this Court's Order requiring specificity as to Shemali's knowledge.

           b.      <u>Myers</u>

In the SAC, Plaintiff provides further support for the allegation that Myers knew the wine was stolen. Unlike the FAC, Plaintiff did not merely argue that Myers "knowingly received stolen

6

wine" in a conclusory fashion. SAC ¶ 22(q). Plaintiff additionally alleged that the stolen wine was "not available anywhere other than Plaintiff's warehouse." *Id.* ¶ 22(k). This allegation indicates that Myers, a wine broker, would have known that he purchased stolen wine because it could not have been purchased elsewhere other than from Plaintiff's warehouse. Furthermore, the SAC alleges that Myers stated during a conversation with HPD owner, Stravinski, "that Plaintiff would have a difficult time 'proving' that the stolen wine was ever in Myers' possession because he made sure the shipping labels were not in his name." SAC ¶ 22(p). This statement can be read as an implicit admission by Myers that he knowingly purchased stolen wine.

Thus, the additional allegations in the SAC demonstrate culpable scienter. Plaintiff complied with the Court's Order requiring specificity as to Myers's knowledge.

### c. Belmont Wine

The SAC, however, fails to allege with specificity that Belmont Wine knew the wine was stolen. Plaintiff merely alleges that it "should have been obvious" to Belmont Wine that Borges trafficked in stolen wine. SAC ¶ 22(m). However, Plaintiff failed to allege that Belmont Wine purchased wine directly from Borges; instead, the SAC alleges that "Shemali immediately sold a large portion of this stolen wine to Belmont Wine." *Id.* But since Shemali is a professional wine broker, Belmont Wine had no obvious reason to suspect that the wine was stolen absent some other indication.

The SAC thus fails to allege with sufficient specificity Belmont Wine's knowledge that the wine it purchased was stolen. Plaintiff thus failed to comply with this Court's Order.

### d. Sandi's Pet Place and the Rodriguezes

The SAC alleges that Sandi's Pet Place and the Rodriguezes "knowingly received stolen wine" because sixteen shipping labels show that wine was shipped from Shemali to Sandi's Pet Place. SAC ¶ 22(r). Moreover, Sandi's Pet Place "held [the wine] for Myers, delivered it to Myers and /or to common carriers at the direction and authorization of Myers, and were thereafter compensated by Myers on numerous occasions." *Id.* Furthermore, according to the SAC, "it is obvious that Sandi's Pet Place and the Rodriguezes were acting as Myer's 'fence.'" *Id.* ¶ 22(p).

However, there are no allegations that the Rodriguezes knew anything about wine

7

distribution or the particular wines involved in these transactions. As such, the Rodriguezes had no reason to suspect the wines were stolen. Nor is there any allegation that the Rodriguezes directly communicated with Shemali or Borges about the sale. The shipping labels showing Sandi's Pet Place as the destination provide no real probative value in establishing that the Rodriguezes knew the wine shipped was stolen. The fact that Sandi's Pet Place received compensation from Myers for receiving and storing is in itself not incriminating absent the Rodriguezes' knowledge the wine was stolen; compensation could have simply been for providing storage for Myers; it does not indicate such storage was done for a nefarious purpose.

Thus, the SAC still fails to allege with specificity facts that Sandi's Pet Place and the Rodriguezes knowingly acted as a fence for Myers. Plaintiff thus failed to comply with this Court's Order.

e. Hi-Time

As mentioned earlier, Plaintiff first discovered that the wine was stolen when another wine broker's employee discovered Plaintiff's wine on Hi-Time's website. The SAC alleges that "Hi-Time, also an experienced wine merchant, knew or should have known, that Shemali, WOW, Tri-Cities, and Borges could not have access to quality wines," SAC ¶ 22(l), and attaches a copy of shipping labels, one of which shows "one shipment to Hi-Time." Stravinski Declaration Ex. G.

However, the SAC fails to demonstrate Hi-Time's knowledge regarding the stolen wine. There is no allegation that Hi-Time spoke to Shemali or Borges and was told the wine was stolen. Since Hi-Time received the wine from a professional reseller, Myers, Hi-Time had no reason to believe the wine was stolen absent any other indication.

By failing to provide greater specificity as to Hi-Time's knowledge of stolen wine, Plaintiff failed to comply with this Court's Order in filing the SAC.

3. Allegations as to the Enterprise Separate From the Alleged Racketeering

a. All Receiving Defendants

The existence of an enterprise requires "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The organization may be "formal or

8

informal," but Plaintiff must show "that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Moreover, "[s]ome knowledge of the enterprise is necessary as part of the requirement of showing association with the enterprise." *United States v. Brandao*, 539 F.3d 44, 51 (1st Cir. 2008).

In the SAC, Plaintiff specifically demonstrated a common purpose among Receiving Defendants by alleging that Receiving Defendants engaged in an agreement "which came to pass and which each defendant was involved . . . to steal wine from Plaintiff's wine storage facility, then s[ell], res[ell], distribut[e] and/or deliver[], offer the sale of the stolen wine." SAC ¶ 26. Plaintiff also showed a structure or organization by alleging that each Defendant played some role in the wine theft ring: Pina, Whitefield, and Borges stole the wine from Plaintiff's facilities; "Borges immediately sold the wine to Shemali and his entities, WOW and Tri Cities, who then immediately re-sold significant amounts of the stolen wine to Belmont Wine Exchange and Myers"; subsequently, the wine was shipped to Sandi's Pet Place, the Rodriguezes, and Hi-Time. *Id.* ¶ 22. Additionally, Plaintiff alleged the longevity of the enterprise by providing that the alleged wine theft "beg[an] in early 2013 and continu[ed] through at least 2015," SAC ¶ 22(a); and that the enterprise was "a well-oiled machine and had been ongoing for over a year-plus prior to Plaintiff's discovery of its existence." *Id.* ¶ 22(o).

Thus, Plaintiff plausibly alleges in the SAC that an enterprise existed among some of Receiving Defendants. However, enterprise allegations fail as to Belmont Wine, Sandi's Pet Place, and Hi-Time because, as discussed in Part 2(c)-(e), Plaintiff failed to sufficiently state that they had knowledge of the enterprise.

    4.    <u>Facts Supporting the Alleged Mail Fraud</u>

        a.    <u>All Receiving Defendants</u>

HPD has brought three RICO claims based on 18 U.S.C. § 1962(b), (c), and (d). To succeed on these claims, a party must provide that the relevant defendants engaged in a pattern of racketeering activity. *Id.* A "'racketeering activity' means . . . any act which is indictable under any of the following provisions of title 18, United States Code . . . section 1341 (relating to mail fraud), . . . sections 2314 and 2315 (relating to interstate transportation of stolen property)." 18

1  U.S.C. § 1961(1). A "'pattern of racketeering activity' requires at least two acts of racketeering
2  activity." *Id.* § 1961(5).

3  The SAC alleges that Receiving Defendants' racketeering activity includes (1) mail fraud,
4  *see* 18 U.S.C. § 1341, and (2) interstate transportation of stolen goods, *see id.* §§ 2314-2315.
5  After the motion to dismiss the FAC, this Court directed Plaintiff to amend any future pleadings to
6  sufficiently allege mail fraud. *See* September 22, 2016 Civil Minutes.

7  Mail fraud applies to "any scheme or artifice to defraud," or where someone "obtain[s]
8  money or property by means of false or fraudulent pretenses," or "dispose[s] of" or "furnish[es]"
9  "any counterfeit coin, obligation, security, or other article." 18 U.S.C. § 1341. This requires: "(1)
10 proof of a scheme to defraud, (2) using the mails or wires to further the fraudulent scheme, and (3)
11 specific intent to defraud." *United States v. French*, 748 F.3d 922, 935 (9th Cir. 2014); *see, e.g.*,
12 *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (affirming a mail fraud conviction
13 where the defendant orchestrated a large scale Ponzi scheme that sent fraudulent cashier's checks
14 through the mail).

15 Moreover, Plaintiff's claims predicated on mail fraud must comport with Rule 9(b). *See*
16 *Schreiber Distrib. Co. v. Serv-Well-Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (applying
17 Rule 9(b) to "fraudulent acts that form the alleged pattern of racketeering activity"). Plaintiff,
18 therefore, "must state with particularity the circumstances constituting fraud or mistake." Fed. R.
19 Civ. P. 9(b).

20 In the FAC, Plaintiff recited that Receiving Defendants committed mail fraud but did not
21 state how. *See* FAC ¶¶ 3-4, 21(a), (m), 47, 53(m). The only relevant references are that
22 Defendants "ship[ped] the stolen wine," *id*. ¶¶ 21(a), (l), (n), 53(a), (l), (n), and Myers "packaged
23 and mailed bottles of stolen wine," *id*. ¶¶ 21(m), 53(m). This recitation in the FAC did not amount
24 to mail fraud, much less state facts with particularity. Unlike in *Rogers*, the FAC does not allege
25 that there was a false representation made by the shipper (Receiving Defendants) through the mail
26 or that counterfeit goods were sent through the mail. *See Rogers*, 321 F.3d at 1229; *see also*
27 *United States v. Kaplan*, 554 F.2d 958, 965 (9th Cir. 1977) (holding that mail fraud requires a
28 scheme to defraud and use of the mail in furtherance of that scheme).

10

In the SAC, Plaintiff added that Defendants engaged in "the sale of stolen wine online and shipments and distributions through the mail." SAC ¶ 22(a). However, this allegation does not demonstrate that Receiving Defendants engaged in mail fraud. It adds nothing materially new to the FAC.

Plaintiff's mail fraud allegations continue to fail to state a claim, and Plaintiff's failure to amend the SAC to plead mail fraud with particularity violated this Court's Order.

5. Facts Showing the Relevant Defendants Had Interest in, Control Over, and/or Conducted the Alleged Enterprise

The September 22, 2016 Minute Order states that "where Plaintiff wishes to state a claim under 18 U.S.C. § 1962(b) and (c)," Plaintiff must provide "facts showing the relevant Defendant had interest in, control over, and/or conducted the alleged enterprise." September 22, 2016 Civil Minutes. Even though the Minute Order refers to both Sections 1962(b) and (c), the phrase "interest in or control in" comes from Section 1962(b). This section provides that the defendant must "acquire or maintain, directly or indirectly, any interest in or control of any enterprise" to be held labile. 18 U.S.C.A. § 1962 (West). To state an interest under Section 1962(b), "a plaintiff must allege that "1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *see also In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1084 (S.D. Cal. 2006) (finding that the plaintiff sufficiently alleged a claim under Section 1962(b) by alleging that the defendants generated income from their scheme and conduct which led to its acquisition, maintenance, and control of the enterprise).

a. Shemali

Plaintiff's allegations seem to indicate that Shemali acquired or maintained interest in the enterprise. Specifically, spreadsheets attached to the SAC indicate that Shemali generated income by purchasing wine from Borges and reselling it. SAC Ex. B. The spreadsheets can also provide a basis to infer that Shemali ordered the additional shipments of stolen wine he expected Borges to obtain because the spreadsheets could be construed as evidencing a planned order by Shemali

11

from Borges to purchase stolen wine that was not available anywhere but in Plaintiff's warehouse. *Id.* Ex. C. The SAC demonstrates Shemali's interest in the theft by alleging that Shemali held close personal and business relationships with other participants in the alleged theft ring – Borges, Belmont Wine, and Myers. *See* SAC ¶ 22(i). Thus, the SAC adequately demonstrates Shemali's interest in the enterprise.

### b. Myers

Myers's alleged conversation with HPD owner, Stravinski, demonstrates Myers's interest in the enterprise. Myers stated "Plaintiff would have a difficult time 'proving' that the stolen wine was ever in Myers' possession because he made sure the shipping labels were not in his name." SAC ¶ 22(p). Plaintiff further stated that "Myers attempted to conceal his participation in the wine theft ring by having some of the stolen wine shipped to Sandi's Pet Place." *Id.* ¶ 22(r). Therefore, the SAC contains enough allegations to infer Myers' interest.

As to Belmont Wine, Sandi's Pet Place, the Rodriguezes, and Hi-Time, the SAC lacks specific allegations of their knowledge, and this precludes claims under Section 1962(b).

### c. Conclusion

In sum, Plaintiff violated this Court's Order because Plaintiff failed to properly allege greater specificity (as ordered by the Court) regarding:

> (a) Receiving Defendants' knowledge of the alleged enterprise as to Belmont Wine, Hi-Time, Sandi's Pet Place, and the Rodriguezes;
>
> (b) participation by Belmont Wine, Hi-Time, and Sandi's Pet Place in the enterprise separate from the alleged racketeering;
>
> (c) the alleged mail fraud as to all Receiving Defendants; and
>
> (d) the allegation that Belmont Wine, Hi-Time, Sandi's Pet Place, and the Rodriguezes had interest in, control over, and/or conducted the alleged enterprise.

In doing so, Plaintiff's Counsel recklessly and frivolously delayed judicial proceedings in violation of 28 U.S.C. § 1927. *See, e.g.*, *Consumer Sols. Reo, LLC v. Hillery*, No. C-08-4357 EMC, 2010 WL 334417, at *2-3 (N.D. Cal. Jan. 28, 2010) (affirming an award of sanctions pursuant to 28 U.S.C. § 1927 when counsel unreasonably and vexatiously asserted claims that the court previously ordered were not reasonable).

B.     Sanctions Under This Court's Inherent Power

As noted above, sanctions under 28 U.S.C. § 1927 may not be awarded for initial proceedings. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Thus, Receiving Defendants seek sanctions pursuant to the Court's inherent power for Plaintiff initiating and pursuing the entire action in bad faith. *See* Motion for Attorneys' Fees at 3.

Sanctions under this Court's inherent power impose "its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). This Court must find bad faith or willful misconduct to invoke its inherent authority to sanction Plaintiff's Counsel in the form of attorneys' fees. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1481-82 (9th Cir. 1989) (finding that absent express statutory authority, courts can impose sanctions in the form of attorneys' fees, but only when there is a finding of bad faith or willful disobedience of court rules or orders). The *Zambrano* holding was based on the American Rule that dictates, absent express statutory authority, bad faith, or willful disobedience of a court order, each party should bear the cost of its own attorneys' fees. *Id.* at 1481; *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) (affirming the American Rule).

As such, a finding of bad faith or willful misconduct imposes a fairly high evidentiary standard. Mere recklessness does not suffice. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Instead, recklessness must be "coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case." *Id.*; *see also Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (vacating sanctions when there was no evidence that the attorney intended to mislead the court). These sanctions "should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). For example, sanctions can be imposed even if a party makes "truthful statement or a non-frivolous argument" if done for an improper purpose. *Fink*, 239 F.3d at 992.

The Court finds that Receiving Defendants have not established Plaintiff's initial filing of

13

the suit was in bad faith sufficient to invoke the inherent power of the Court to impose fee shifting sanctions. Plaintiff did experience a substantial theft of wine; the investigation found that numerous individuals and business bought and sold the stolen wine under circumstances reasonably thought to be suspicious, at least in the first instance. Although ultimately (as found herein), many of the allegations were found not sufficient to support a finding of knowledge that the wine was stolen as to some of Receiving Defendants, the Court cannot say that the claims against them were so baseless at the outset as to establish Plaintiff's bad faith in initiating this case.

C. Attorneys' Fees

Because the Court has decided to award fees, it also decides: first, whether the requested fees are supported; and second, whether the amount of requested fees is appropriate.

1. Support for Attorneys' Fees

Traditionally, the reasonableness of attorney's fees is "the number of hours reasonably expended on the litigation multiplied by the reasonable hour rate." *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). Accordingly, "the party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed." *Id.* Counsel is "not required to record in great detail how each minute of his time was expended" but should "identify the general subject matter of his time expenditures." *Id.* at 437. This Court has previously found that declarations by attorneys of the party seeking attorneys' fees are sufficient to establish the reasonableness of fees. *See Cyma (U.S.A.) Ltd. v. Lumondi*, Inc., 2011 WL 1483394, Case No. C-09-2802 MHP (EMC), at *2-3 (N.D. Cal. 2011). In addition, "counsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Receiving Defendants' Counsel provided a declaration in support of the motion for attorneys' fees, explaining Defendant's calculation of attorneys' lodestar. *See* Foote Declaration ¶¶ 12-13. Also, counsel claims to have reduced hours which he believes were "duplicative, excessive, or not necessary to defend this action." *Id.* ¶ 13.

2. The Amount of Attorney's Fees

Receiving Defendants request that this Court grant its motion for attorneys' fees under

Section 1927 for Plaintiff's Counsel to pay $174,860 and/or under this Court's inherent authority $279,070 for the entire litigation. *See* Motion for Attorneys' Fees at 25. Since the Court grants attorneys' fees under Section 1927 and not under the Court' inherent authority, the Court determines the reasonableness of only the $174,860 amount.

The hourly rates are reasonable. The reasonable hourly rates are generally determined by the relevant community where the district court sits. *See Camacho v. Bridgeport, Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also Fallay v. S.F. City & Cty*, No. C-08-2261-CRB, 2016 WL 879632, at *6 (N.D. Cal. Mar. 8, 2016) (stating that courts are to look at customary rates charged for work performed in the relevant legal community, the attorneys' reputation and experience, the quality of services, complexity of the work performed, and the results). Here, the relevant community is the San Francisco Bay Area.

The reasonableness of hourly rates is also determined by the level of experience. *Camacho*, 523 F.3d at 979. The billable rates for Partners John Foote and Gregory O'Hara in the instant case were $600, and counsel's declaration notes that Partners Foote and O'Hara have been practicing civil ligation for over thirty years. *See* Foote Declaration ¶¶ 9-15. The hourly rate for Associate Karl Sung was $400, and he has been practicing civil litigation for four years. *Id.* Paralegal Lisa Phillips billed at $300. *Id.* These rates fall within the range of reasonable hourly rates for the local area given their respective experience. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding that the district court did not abuse its discretion when it awarded Bay Area attorneys practicing in federal civil litigation up to $700 for a partner with twenty-three years of experience, $325 for an associate with five years of experience, and $190 for paralegals); *Gutierrez v. Wells Fargo, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015), *appeal dismissed* (Oct. 30, 2015) (awarding attorneys' fees for partners who billed between $475 and $975 per hour; associates with hourly rates between $300 and $490); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (accepting hourly rates ranging from $355 to $1,095 for partners and associates in the San Francisco Bay Area).

The Court has reviewed submissions by Defendants' Counsel. In support of the requested

fees, Receiving Defendants' Counsel provided the number of hours by each lawyer's involvement and attached a table detailing the breakdown of the amount of fees incurred by each Receiving Defendant. *See* Foote Declaration Exs. 6-17.

Receiving Defendants request that this Court grant its motion for attorneys' fees under Section 1927 in the amount of $174,860, representing all the work incurred since the filing of the motion to dismiss the Original Complaint. However, Receiving Defendants are only entitled to attorneys' fees incurred after the Court granted Defendants' motion to dismiss the FAC; it was at that point did Plaintiff's counsel violated this Court's Order, and thus it is only at this point did some of Plaintiff's actions become sanctionable under Section 1927. Accordingly, the Court has allocated fees per each Defendant to reflect the fees spent defending those claims which the Court finds were frivolously advanced in the SAC. In making that allocation, the Court examined and estimated the percentage of time spent responding to each such claim by any particular Receiving Defendant.

a. Shemali

In regards to Shemali, Plaintiff violated this Court's Order when it failed to allege a pattern of racketeering using mail fraud. The Court calculated the fee amount addressing this claim to be $3,950.

b. Myers

For Myers, Plaintiff likewise violated this Court's Order when it failed to allege a pattern of racketeering using mail fraud. The Court calculated the fee amount for this violation to be $3,855.

c. Belmont Wine

As to Belmont Wine, Plaintiff violated this Court's Order when it failed to provide greater specificity as to Belmont's knowledge, a pattern of racketeering under mail fraud, and interest or control in the enterprise. The Court calculated the fee amount in responding to these claims total $5,222.40.

d. Sandi's Pet Place and the Rodriguezes

In regards to the Rodriguezes and Sandi's Pet Place, Plaintiff violated this Court's Order

when it failed to allege greater specificity to the Rodriguezes and Sandi's Pet Place's knowledge, a pattern of racketeering under mail fraud, and interest or control in the enterprise. The fee amount in responding to these claims total $5,433.20.

    e. <u>Hi-Time</u>

As to Hi-Time, Plaintiff violated this Court's Order when it failed to allege greater specificity as to Hi-Time's knowledge, a pattern of racketeering under mail fraud, and interest or control in the enterprise. The Court calculated the fee amount in responding to these claims total $5,276.80.

  3. <u>Conclusion</u>

Adding the fee amounts discussed above, the Court grants a total amount of $23,737.40 in fees owed by Plaintiff under 28 U.S.C. § 1927.

## IV. **CONCLUSION**

For the foregoing reasons, the Court:

1. **GRANTS** Defendant's request for sanctions under 28 U.S.C. § 1927 in the amount of $23,737.40 allocated among Receiving Defendants as stated above; and
2. **DENIES** Defendant's request for sanctions under this Court's inherent power.

This order disposes of Docket No. 152.

**IT IS SO ORDERED**.

Dated: March 20, 2017

                _____
                EDWARD M. CHEN
                United States District Judge